Zinger 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00631-CR







William Zinger, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 92-3659, HONORABLE WILLIAM BLACK, JUDGE PRESIDING








 Appellant William Zinger was convicted of aggravated sexual assault of a child. 
Tex. Penal Code Ann. § 22.021 (West 1994). (1) After a jury trial, the court sentenced appellant
to thirty-five years in the Institutional Division of the Texas Department of Criminal Justice. 
Appellant's motion for new trial was overruled by operation of law, and appellant brings this
appeal alleging ten points of error. 

 Appellant argues that: (1) the trial court erred in sustaining the State's challenge
for cause to venireperson Thomas Sharpe over appellant's objection; (2) the trial court erred in
sustaining the State's challenge for cause to venireperson Robbin Gatling over appellant's
objection; (3) the trial court erred in admitting hearsay testimony from the victim's mother
relating statements by the victim after the initial outcry; (4) the trial court violated Article 1.15
of the Texas Code of Criminal Procedure when it allowed the attorneys for both parties to
stipulate to evidence without requiring appellant to sign a written consent to stipulate and without
filing its written approval of the stipulation in the papers of the cause; (5) the trial court erred in
admitting hearsay of the victim through the testimony of Terri Perelman-Hall; (6) the trial court
erred in admitting Perelman-Hall's testimony about post-traumatic stress reaction; (7) the trial
court erred in charging the jury that the limitations period for the offense for which appellant was
convicted was ten years; (8) the trial court erred in failing to instruct the jury in accordance with
Rule 201(g) of the Texas Rules of Criminal Evidence regarding judicial notice; (9) the evidence
is insufficient to show the date of the offense was within the statutory period of limitations; and
(10) the trial court erred in overruling appellant's objection to the prosecutor's final argument at
the punishment stage regarding what the victim wanted from the jury in terms of punishment. We
will affirm the judgment of conviction.



DISCUSSION


 In his first two points of error, appellant contends that the trial court erred in
sustaining the State's challenge for cause to venirepersons Sharpe and Gatling over appellant's
objection. Article 35.16(b)(3) of the Texas Code of Criminal Procedure provides that the State
may challenge for cause a venireperson who has "a bias or prejudice against any phase of the law
upon which the State is entitled to rely for conviction or punishment." Tex. Code Crim. Proc.
Ann. art. 35.16(b)(3) (West Supp. 1995). An appellate court should defer to the trial court when
reviewing its ruling on voir dire challenges. Cantu v. State, 842 S.W.2d 667, 681 (Tex. Crim.
App. 1992). In Cantu, the court instructed: 



In reviewing a decision by the trial judge to sustain a challenge for cause, the
standard of review is whether the totality of the voir dire testimony supports the
trial judge's implied finding of fact that the prospective juror is unable to take the
requisite oath and follow the law as given by the trial judge.



Id. at 682. Appellate courts, thus, grant considerable latitude to the trial court, who is able to
directly observe the demeanor of prospective jurors and evaluate their responses. Id. 

 In this case, veniremember Sharpe's testimony was as follows:



Q: . . . Mr. Sharpe, you've been asked several times in the same manner about
whether you can convict someone on the testimony of one witness, even if
you believe beyond a reasonable doubt that witness' testimony establishes the
elements of the offense; is that correct? I think it's always been your
statement that one witness, under any circumstance, is not enough?


A: That's not enough for me.


Q: Regardless of whether or not you believe that witness beyond a reasonable
doubt?


A: That's not enough.


 . . .


Q: Mr. Sharpe, is what you're saying that you cannot imagine being convinced
beyond a reasonable doubt by only one witness? Do you understand that
there is a distinction between being convinced beyond a reasonable doubt and
being convinced beyond a reasonable doubt and still not be willing to convict
someone?


A: Right.


Q: Which of those two are you saying?


A: I would not be willing to convict someone based on even convincing
testimony of one person.


Q: So you're saying that you could not be convinced beyond a reasonable doubt?


A: I could not send a person to jail based on convincing--overwhelmingly
convincing testimony of one person.


Q: Okay. Now--but so I guess the question is, are you saying that you cannot
conceive of being convinced beyond a reasonable doubt by only one witness?


A: That's correct.



Similarly, veniremember Gatling testified as follows:



Q: Mr. Gatling, I was questioning you about whether you could believe a
witness--if you believed a witness beyond a reasonable doubt and that witness
established all the elements of the State's case, that one witness. And I
believe it was your statement was [sic] that one witness is not enough, you
were going to need more.


A: That's correct. In the scenario that you laid out, if someone was walking
down the street, my neighbor robbed me, in that scenario, yes. If there was
nothing else, even though I probably wouldn't like it myself, but that's the
situation.


Q: And what it comes down to is, even though you can believe that person
beyond a reasonable doubt, what that person is saying, you still want more?


A: There's a question right there of reasonable doubt.


Q: What the law says is that that's the standard.


A: Okay.


Q: Are you saying that anytime there's only one witness, that that standard can't
be reached for you, no matter what?


A: Not for me, no, sir. I wouldn't--no matter who it was, if it was just one
person against another person, to get to that point that you're suggesting, I
wouldn't be able to do it.


 . . .


Q: So what you're saying, you understand that if you were convinced beyond
a reasonable doubt, your obligation would be to vote to convict someone, but
what you're saying, as I understand it, is you just cannot conceive reaching
proof beyond a reasonable doubt only on one witness.


A: I couldn't get to that point.



 In Caldwell v. State, 818 S.W.2d 790 (Tex. Crim. App. 1991), cert. denied, 112
S.Ct. 1684 (1992), the trial court sustained the State's challenge for cause of a venireperson who
stated that even if he believed the testimony of one witness beyond a reasonable doubt and if the
testimony proved the indictment beyond a reasonable doubt, he would still require additional
evidence before he could return a verdict of guilty. Id. at 796. The Court of Criminal Appeals
held that by requiring the State to prove the case with more than one witness, the venireperson
would have held the State to a higher burden of proof than required by law. The court decided
that the venireperson's testimony demonstrated a bias against a phase of the law upon which the
State was entitled to rely and that he was properly challengeable for cause. Id. at 797.

 Appellant contends that the Court of Criminal Appeals effectively overruled
Caldwell with its decision in Garrett v. State, 851 S.W.2d 853 (Tex. Crim. App. 1993). In
Garrett, the trial court sustained a challenge for cause to a venireperson who stated that he would
require something more than the facts of the case to affirmatively answer the second special issue
concerning the defendant's future dangerousness. Id. at 859. In reversing the trial court's
decision, the Court of Criminal Appeals recognized that the law permits jurors to find future
dangerousness based on the facts of the offense alone. Id. The court noted that the law does not
define proof beyond a reasonable doubt and that each juror must individually determine what it
means based on the facts and the applicable law of the case, thereby finding that "[a] particular
juror's understanding of proof beyond a reasonable doubt may lead him to require more than the
legal threshold of sufficient evidence to answer the second special issue affirmatively." Id. at 859,
859-60. Thus, the court held that the trial court erred in sustaining the State's challenge for
cause, which was based solely on the venireperson's indication that he would require more
evidence than the legal minimum in order to be convinced beyond a reasonable doubt. Id. at 860. 
 

 Although appellant's arguments are persuasive, Garrett is distinguishable from the
case at hand. In Coleman v. State, 881 S.W.2d 344 (Tex. Crim. App. 1994), the trial court
granted the State's challenge for cause to a venireperson who would impose on the State a higher
burden than proof beyond a reasonable doubt. Id. at 359. The venireperson stated that she would
have to be one hundred percent certain before she could affirmatively answer an issue regarding
the future dangerousness of the defendant. Id. The Court of Criminal Appeals distinguished
Garrett, concluding that appellant's reliance on that case was not persuasive because "the trial
court was entitled to find [the venireperson] would not find appellant guilty even if the State
proved its case beyond a reasonable doubt." Id. at 360. The court stated that a prospective juror
who holds the State to a higher standard than proof beyond a reasonable doubt may be properly
challenged for cause. Id.

 Similarly, in this case, both venirepersons stated that the testimony of one witness
would not be enough for them to convict a defendant even if they believed the witness established
all the elements of the State's case beyond a reasonable doubt. Both venirepersons would hold
the State to a higher standard than beyond a reasonable doubt. In Garrett, the venireperson set
his individual definition of proof beyond a reasonable doubt at a higher level than the legal
minimum required to sustain a jury verdict, but presumably he would have been able to convict
a defendant once his individual threshold was reached. However, the venirepersons in the present
case stated that even after the level of proof surpassed their personal definition of beyond a
reasonable doubt, they would not be able to convict a defendant without more. Both
venirepersons clearly had a bias or prejudice against a phase of the law upon which the State is
entitled to rely. Because Garrett is distinguishable, appellant's first two points of error are
overruled. 

 In his third point of error, appellant contends that the trial court erred in admitting
hearsay testimony from the victim's mother relating what the victim told her after the initial
outcry. Appellant concedes that in cases involving the sexual abuse of children, the child's initial
outcry statement is admissible as an exception to the hearsay rule under Article 38.072 of the
Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 1995). 
However, appellant asserts that the trial court included statements that were not part of the child's
initial outcry and thus admitted testimony that should have been excluded under the hearsay rule.

 The victim's mother testified that on March 10, 1992 her son answered
affirmatively when she asked him if anything had happened between him and appellant. 
According to the victim's mother, the child told her that when he spent the night with appellant,
appellant waited until he thought the child was asleep and then pulled the child's underwear down. 
Appellant then placed Vaseline on his own penis and laid on top of the child. Appellant did this
a couple of times. The victim's mother further testified that when she was getting ready to take
her son to the doctor on March 13, 1992, the child told her that appellant had penetrated him
through his rectum.

 Appellant concedes that it was proper for the victim's mother to testify about the
child's initial outcry statement, which was made to her on March 10, 1992. However, appellant
contends that the victim's mother should not have been allowed to testify about what the child told
her three days later on March 13. According to appellant, testimony about the penetration was
hearsay and should not have been admitted unless it fell under a specific exception to the hearsay
rule. Appellant argues that Article 38.072 applies to a single "statement" from the victim and that
a statement given by the victim three days after the initial outcry statement cannot be considered
part of the same outcry. Appellant thus contends that the State cannot show beyond a reasonable
doubt that this error made no contribution to appellant's conviction or to the assessment of
punishment and that the point of error should be sustained.

 Out-of-court testimony must rise to a certain level of reliability before it becomes
admissible as an exception to the hearsay rule. (2) Article 38.072, section 2(b) provides that a
child's outcry statement is admissible if the party intending to offer the statement gives notice to
the adverse party of this intention, the trial court determines the statement to be reliable in a
hearing conducted outside the presence of the jury, and the child testifies or is available to do so
in court or in any other lawful manner. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1)-(3)
(West Supp. 1995). Appellant does not raise a point of error regarding the elements of section
2(b), and thus, we must presume the State complied with the statute. Appellant challenges only
the extent of the testimony constituting the "outcry" that the trial court admitted under this hearsay
exception.

 It is often very difficult to prove the sexual abuse of a child because the crime is
usually committed in secrecy with no eyewitnesses other than the child. John Myers & Nancy
Perry, Child Witnesses Law and Practice § 5.38 (1987). The primary responsibility for the
protection of children rests with the courts, and the extent of the protection offered by the legal
system depends on what physical abuse, molestation, or neglect can actually be proved. Id.
§ 5.41. The child's out-of-court statements often make or break an entire case. Id. However,
the courts must also follow the hearsay rules embodied in the Texas Rules of Criminal Evidence
to assure the reliability of out-of-court statements admitted into evidence. The courts must
therefore achieve a balance that fosters the important governmental interest in protecting children
while maintaining fundamental fairness. Id. This balance tips toward admitting children's out-of-court statements because children "often give the clearest and truest testimony." Id. (citing 4
William Blackstone, Commentaries *214). 

 In Moon v. State, 856 S.W.2d 276 (Tex. App.--Fort Worth 1993, pet. ref'd), the
child victims made multiple statements to Ms. Young, the outcry witness, from November 3, 1989
until November 27, 1989. The children's statements involved numerous acts of sexual abuse
committed by their parents as well as by the appellants, their aunt and uncle.



When one reads the record of the trial testimony, it is clear that the children's
statements to Ms. Young were continuing statements made to the same individual. 
It is clear from reading the record before us that it was difficult for the children to
discuss all the things that had happened to them all at one time. The account of
their story as related to Ms. Young was one continuous story they told over several
weeks.



Id. at 281 (emphasis added). 

 In Norris v. State, 788 S.W.2d 65 (Tex. App.--Dallas 1990, pet. ref'd), the child
first stated that a "man touched me" and then, after being taken into a doctor's examination room,
related that a substitute teacher at her elementary school had touched her private area. Id. at 68. 
As in this case, the appellant in Norris contended that the trial court erred in admitting the second
statement into evidence because Article 38.072 allows admission of only one statement and
because the second statement contained inadmissible details of the offense. The Dallas Court of
Appeals determined that "[t]he child's subsequent statements described the offense and were part
of the same outcry statement." Id. at 69. 

 In Moon, the children's story was told over the course of several weeks. 856
S.W.2d at 281. In Norris, the victim's story was told in multiple statements during one day. 788
S.W.2d at 68. In this case, the child completed his statement to his mother three days after
beginning his initial outcry. It is clear that the child was relating something that was very difficult
and awkward for him to talk about, and it took him a few days to complete his story. It would
be impossible for us in our judicial capacity to set a specific time period over which a child's
outcry must be completed in every case. 

 Appellant incorrectly contends that Article 38.072 applies to only one statement
from the victim. Article 38.072 specifically authorizes the admission of more than one statement
by the child. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a) (West Supp. 1995) ("This article
applies only to statements that describe the alleged offense . . . .") (emphasis added). In this case,
because the child told his mother one continuous story over three days, the trial court properly
admitted all of his statements as part of the initial outcry. Accordingly, we overrule appellant's
third point.

 In his fourth point of error, appellant asserts that the trial court violated Article
1.15 of the Texas Code of Criminal Procedure by admitting stipulations into evidence without
obtaining appellant's written consent to stipulate and without filing written approval of the
stipulation in the papers of the cause. Appellant contends that Article 1.15 is a mandatory statute
that must be strictly followed and may not be waived by the accused. Article 1.15 provides in
pertinent part:



The evidence may be stipulated if the defendant in such case consents in writing,
in open court, to waive the appearance, confrontation, and cross-examination of
witnesses, and further consents either to an oral stipulation of the evidence and
testimony or to the introduction of testimony by affidavits, written statements of
witnesses, and any other documentary evidence in support of the judgment of the
court. Such waiver and consent must be approved by the court in writing, and be
filed in the file of the papers of the cause.



Tex. Code Crim. Proc. Ann. art. 1.15 (West Supp. 1995). 

 Appellant correctly asserts that Article 1.15 is mandatory and demands strict
compliance before a stipulation can be considered as evidence. McClain v. State, 730 S.W.2d
739, 742 (Tex. Crim. App. 1987). However, Article 1.15 is only applicable in cases where the
defendant has waived his right to a jury trial. Berry v. State, 504 S.W.2d 501, 504 (Tex. Crim.
App. 1974); Lindley v. State, 736 S.W.2d 267, 275 (Tex. App.--Fort Worth 1987, pet. ref'd
untimely filed). "Stipulations, oral or written, in criminal cases where the plea of not guilty is
entered before the jury do not have to comply with Article 1.15, V.A.C.C.P." Messer v. State,
729 S.W.2d 694, 699 (Tex. Crim. App. 1986) (emphasis omitted). Because this case was tried
before a jury, Article 1.15 is inapplicable, and the stipulations were properly admitted into
evidence. We therefore overrule appellant's fourth point. 

 Appellant's fifth point of error asserts that the trial court erred in admitting hearsay
statements by the victim through the testimony of Dr. Perelman-Hall. Dr. Perelman-Hall, a
licensed clinical psychologist who had been in practice for fourteen years at the time of trial, is
a member of the Texas Psychological Association, the American Psychological Association, and
the Association for Humanistic Psychology. Dr. Perelman-Hall provides training in the area of
post-traumatic stress disorder ("PTSD"), and over the last fourteen years, she has seen hundreds
of children and adolescents with PTSD. Dr. Perelman-Hall consulted with the victim in this case
approximately fifteen times, and she testified at trial regarding the nature of PTSD and its
symptoms, comparing PTSD symptoms to the symptoms that she observed upon examination and
treatment of the victim. Dr. Perelman-Hall testified that in her opinion, the victim's symptoms
were "consistent with posttraumatic stress disorder resulting from sexual abuse." 

 Rule 803(4) of the Texas Rules of Criminal Evidence dictates that the hearsay rule
not exclude "[s]tatements made for purposes of medical diagnosis or treatment and describing
medical history, or past or present symptoms, pain, or sensations, or the inception or general
character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or
treatment." Tex. R. Crim. Evid. 803(4). This exception to the hearsay rule originated with the
premise that a patient will provide accurate information to a physician in order to receive effective
treatment. Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.--Austin 1991, pet. ref'd). The
rationale behind this exception seemingly breaks down when the patient is a very young child
because younger children may not be able to understand the necessity of making truthful
statements for the purposes of medical diagnosis or treatment. Id. However, we held in Fleming
that a child's statements to a mental health therapist "describing the abusive acts and identifying
the abuser were reasonably pertinent to medical diagnosis and treatment, and were properly
admitted pursuant to Rule 803(4)." Id. 

 No specific determination was made in this case as to whether the victim
comprehended the need to be truthful in his statements to the psychologist, but the record supports
this conclusion. Dr. Perelman-Hall testified that by reviewing the results of tests administered
by another doctor, she was able to determine that the victim was not experiencing delusions,
hallucinations, or any other type of psychotic behavior. She also determined that it would be
"virtually impossible" for a child to consistently fake the unique symptoms of PTSD, "just like
someone would have a hard time faking diabetes." 

 Assuming arguendo that the testimony was not admissible under Rule 803(4), the
admission of such testimony was harmless. Error was properly preserved in the case of Dr.
Perelman-Hall, but appellant then allowed Dr. Beth Nauert to testify to the same information
without objection. "The subsequent admission of the same evidence renders admission of the
hearsay harmless, and nothing is presented for review." Macias v. State, 776 S.W.2d 255, 259
(Tex. App.--San Antonio 1989, pet. ref'd) (citing Mutscher v. State, 514 S.W.2d 905, 919 (Tex.
Crim. App. 1974)). Accordingly, appellant's fifth point of error is overruled. 

 In his sixth point of error, appellant argues that the trial court erred in admitting
the testimony of Dr. Perelman-Hall regarding PTSD. Appellant contends that the testimony
should have been excluded under Rule 702 of the Texas Rules of Criminal Evidence because it
did not aid to the jury in understanding the evidence or determining fact issues. Appellant further
asserts that, insofar as Dr. Perelman-Hall's knowledge of this particular situation was derived
from discussions with the victim, her opinions rested on an inadequate basis and such testimony
should thus have been excluded. 

 Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge
will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto
in the form of an opinion or otherwise." Tex. R. Crim. Evid. 702. The trial court has full
discretion to decide whether to allow a witness to testify as an expert. Duckett v. State, 797
S.W.2d 906, 910 (Tex. Crim. App. 1990), overruled on other grounds, Cohn v. State, 849
S.W.2d 817 (Tex. Crim. App. 1993). The Court of Criminal Appeals has recognized that "the
`threshold determination' for a trial court to make regarding the admission of expert testimony
is whether that testimony will help the trier of fact understand the evidence or determine a fact
in issue." Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (citing Duckett, 797
S.W.2d at 910). Expert testimony may only be admitted if the expert's knowledge and experience
pertaining to a relevant issue exceeds that of an average juror. Duckett, 797 S.W.2d at 914. It
should be noted, however, that no bright-line standard delineates issues that are within the
comprehension of jurors from those that are not. Id. at 917. 

 In Cohn v. State, 849 S.W.2d 817 (Tex. Crim. App. 1993), the Court of Criminal
Appeals discussed the probative value of expert testimony that described behaviors observed in
young sexually abused children. Id. at 818-19. In pertinent part, the court stated:



When a child demonstrates no sexual behaviors, but does experience signs of
serious anxiety or post-traumatic stress disorder, expert testimony may still be
relevant. In this scenario, however, testimony serves only to establish that the
child may have experienced some type of traumatic event. Such testimony is not
specific to sexual abuse.



Id. at 819. The court noted the unwillingness of the psychological community to conclude that
sexual abuse has occurred based solely on evidence of anxiety without either additional medical
evidence or some other type of evidence more indicative of sexual abuse. Id. Thus, Dr.
Perelman-Hall's testimony in this case may have been objectionable to the extent it suggested that
evidence as to the characteristics of anxiety was by itself an adequate indication of sexual abuse. 
See id. 

 However, Dr. Perelman-Hall's testimony that anxiety is consistent with sexual
abuse and that the victim behaved with such anxiety constitutes circumstantial evidence that the
child went through some traumatic event, and to that extent, it was relevant evidence. See id. 
PTSD and other issues involving child sexual abuse appear more and more frequently as topics
of newspaper articles, books, and television programs. See Duckett, 797 S.W.2d at 917. "[S]uch
attempts to educate the public only underscores the foreignness of the subject to society in general
and a lay jury in particular." Id. Furthermore, "[t]he record does not reflect the jury was of such
composition that the knowledge was elementary or commonplace." Id. Therefore, Dr. Perelman-Hall's testimony provided a specialized view regarding the behavioral reaction of a child to an
abusive situation. 

 As we have noted, Dr. Perelman-Hall is a qualified clinical psychologist who has
examined hundreds of children and adolescents with PTSD. While "expert testimony which
decides an ultimate fact for the jury, such as `a direct opinion on the truthfulness of the child,'
crosses the line and is not admissible under Rule 702," Yount, 872 S.W.2d at 708, "there is a
significant distinction between presenting a witness, such as a polygraph operator, to testify that
a person is telling the truth, and presenting a witness who can state that the behavior of a witness
falls within a common pattern." Duckett, 797 S.W.2d at 915. Dr. Perelman-Hall did not testify
as to the child's credibility or as to the credibility of the entire class of child abuse victims. See
Yount, 872 S.W.2d at 711. She simply explained the symptoms of PTSD as well as the symptoms
observed in the victim. She then pointed out that the victim's case was "consistent with
posttraumatic stress disorder resulting from sexual abuse." Because this testimony would, if
believed, assist a lay juror in understanding the evidence, and because it did not decide an ultimate
fact issue for the jury, Dr. Perelman-Hall's testimony was properly admitted under Rule 702. 
Therefore, we overrule appellant's sixth point of error.

 In his seventh point of error, appellant asserts that the trial court erred in charging
the jury that the limitations period for the offense for which appellant was convicted was ten
years. Appellant asserts that the applicable period of limitations was five years, as set forth in
Article 12.01(4)(C) of the Texas Code of Criminal Procedure. Because he failed to object to the
court's charge at the time of trial, appellant concedes that he must now show that he has suffered
egregious harm as a result of this allegedly improper charge. See Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (holding that when no proper objection was made at trial, the
judgment will be reversed only if the error is so egregious and created such harm that the
defendant "has not had a fair and impartial trial"). 

 The indictment charges appellant with sexual assault in violation of section
22.011(a)(2)(A) and (B) of the Texas Penal Code, which is included in the ten-year section of the
limitations article. See Tex. Code Crim. Proc. Ann. art. 12.01(2)(D) (West Supp. 1995)
(providing a ten-year statute of limitations for sexual assault under section 22.011(a)(2) of the
Penal Code). Because it was additionally alleged in this case that the victim was a child under 14
years of age, the offense was elevated to the status of an aggravated sexual assault. See Tex.
Penal Code Ann. § 22.021(a)(2)(B) (West 1994). "Any offense that bears the title `aggravated'
shall carry the same limitations period as the primary crime." Tex. Code Crim. Proc. Ann. art.
12.03(d) (West Supp. 1995). Therefore, the crime of aggravated sexual assault under 22.021
carries the same limitations period as sexual assault under 22.011. The trial court's charge
properly included a ten-year limitations period, and appellant's seventh point of error is overruled.

 Appellant asserts in his eighth point of error that the trial court erred in failing to
instruct the jury in accordance with Texas Rule of Criminal Evidence 201(g) regarding judicial
notice. In his ninth point of error, appellant alleges that the trial court erred because the evidence
is insufficient to show that the date of the offense was within the statutory period of limitations. 
We address this latter point first.



 The court's charge in pertinent part instructed the jury:



 You are further charged as the law in this case that the State is not required
to prove the exact date alleged in the indictment but may prove the offense, if any,
to have been committed at a time prior to the presentment of the indictment so long
as said offense, if any, occurred within 10 years of the date of the presentment of
the indictment.


 You are further instructed as a part of the law in this case that the indictment
against the defendant is not evidence in the case, and the true and sole use of the
indictment is to charge the offense, and to inform the defendant of the offense
alleged against him. The reading of the indictment to the jury in the statement of
the case of the State against the defendant cannot be considered as a fact or
circumstance against the defendant in your deliberations.


 You are charged that it is only from the witness stand that the jury is
permitted to receive evidence regarding the case, or any witness therein, and no
juror is permitted to communicate to any other juror anything he may have heard
regarding the case or any witness therein, from any source other than the witness
stand.



A statute-of-limitations defense must be raised by the defendant in a timely manner in the trial
court or it is waived. State v. Yount, 853 S.W.2d 6, 8-9 (Tex. Crim. App. 1993). Appellant
failed to assert the statute of limitations as a defense, to request an instruction on the limitations
defense, and to otherwise raise the issue in the trial court. Thus, appellant waived the defense,
and it was not necessary for the State to prove the date of the indictment's presentment in order
to establish appellant's guilt. Decker v. State, No. 3-94-274-CR, slip op. at 10 (Tex. App.--Austin
Mar. 1, 1995, pet. filed). 

 Assuming arguendo that appellant raised a limitations defense, the date of filing
usually noted on the indictment is evidence of the date of presentment of the indictment by the
grand jury. Bishop v. State, 507 S.W.2d 745, 746 (Tex. Crim. App. 1974). As we have already
determined, the trial court properly charged the jury that aggravated sexual assault of a child
carries with it a ten-year limitations period. Tex. Code Crim. Proc. Ann. arts. 12.01(2)(D),
12.03(d). The indictment in this case was marked filed on July 22, 1992 and alleged that the
offense occurred on or about August 16, 1991. In addition, the evidence established that the
alleged offense could not have been committed before 1984 or after March of 1992 and was, thus,
sufficient to show that the date of the offense was within the statutory period of limitations. (3) We
therefore overrule appellant's ninth point of error. 

 As part of its proof in the case, the State asked the trial court to take judicial notice
that the indictment was returned on July 22, 1992. Because appellant made no objection to the
trial court's failure to instruct the jury in accordance with Rule 201(g) regarding its judicial notice
that the indictment was returned on July 22, 1992, he concedes that he must now show egregious
harm in order for the court to sustain his eighth point of error. See Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984). We do not agree with appellant's claim that he was
egregiously harmed because the omission in the jury charge resulted in the improper presentation
of one of his defenses. Egregious harm is not shown where the omission in the charge concerns
an incidental defensive theory or a defensive theory not raised by appellant. See Williams v.
State, 851 S.W.2d 282, 289 (Tex. Crim. App. 1993) (holding that any error in not submitting fact
issue of safeness to jury was not egregious harm where safeness was not even incidental theory
of defense and where error had minimal impact on appellant's trial); Lawrence v. State, 700
S.W.2d 208, 213 (Tex. Crim. App. 1985) (determining that voluntary manslaughter was
incidental theory of defense such that subtle deletion of State's burden of proof on absence of
sudden passion in charge could not realistically have caused egregious harm). Thus, the trial
court's failure to instruct the jury on its consideration of matters judicially noticed--in this case,
the date of the presentment of the indictment--had a minimal impact on the trial and caused no
egregious harm because appellant raised no defensive theory involving the limitations period, nor
was any such theory mentioned in closing arguments. Appellant's eighth point of error is also
overruled.

 In his tenth point of error, appellant asserts that the trial court erred in overruling
his objection to the prosecutor's final argument at the punishment phase regarding what the victim
wanted from the jury in terms of punishment. During closing argument, the prosecutor stated:



Mr. Cobb [for the State]: . . . Mr. Grizzard spoke so much for his client and so
much for me, I feel that I should maybe not even say anything, but what I want to
do is take this opportunity to speak for the [victim]. And that is the person who
we need to look at in deciding what punishment this defendant received because he
is involved in this, it's not just William Zinger.


. . . When someone has hurt you, you can forgive them. No one can forgive them
for you. What Mr. Grizzard is asking you to do, is forgive William Zinger for
what he has done to [the victim]. That is not what [the victim] wants from you. 
What [the victim] wants from you--


Mr. Grizzard [for the appellant]: Judge, I'm going to object. It is improper for
Mr. Cobb to speak for [the victim] as though he is here speaking. It's inviting the
jury to speculate what [the victim] would say and this is not--


The Court: Stay within the record. Overruled.



 Appellant correctly points out that "[t]he purpose of closing argument is to facilitate
the jury in properly analyzing the evidence presented at trial so that it may `arrive at a just and
reasonable conclusion based on the evidence alone, and not on any fact not admitted into
evidence.'" Campbell v. State, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980) (citations omitted). 
Permissible jury arguments fall within several categories: (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea
for law enforcement. Id. Appellant contends that the prosecutor's final argument in this case
does not fall in any of these categories. According to the State, appellant's argument at the
punishment phase urged a lower term of imprisonment because appellant's age presented the
possibility that he might die in prison and also asked the jury to consider appellant's good works
in the community. The State asserts that the prosecutor's closing argument merely responded to
the argument of opposing counsel and made a plea for law enforcement.

 In addition, the State asserts that the prosecutor was making a summation of the
evidence in his closing argument and that the argument was, thus, proper. The State cites Dorsey
v. State, 709 S.W.2d 207 (Tex. Crim. App. 1986), for the proposition that "[i]f a prosecutor
wants to argue that a victim desires his or her assailant incarcerated, then these facts need to be
in evidence." Id. at 210. Dr. Perelman-Hall, an expert for the State, testified that the victim
expressed anxiety about coming to court but wanted to testify. She also noted that the victim
feared appellant would hunt him down and hurt him if appellant were found not guilty and set
free. Dr. Nauert, also an expert for the State, testified that the victim told her that he made his
initial outcry so that no more problems would arise and that he hoped the appellant went to jail. 
According to the State, the prosecutor was summing up facts in evidence when he made his
closing remarks. It is also noteworthy that the prosecutor's argument was interrupted by
appellant's objection and that he never actually told the jury what the victim wanted. Even
assuming the prosecutor did tell the jury the victim's desires, his argument clearly fits into one
of the four permissible categories set forth in Campbell. For this reason, appellant's tenth point
of error is overruled.



CONCLUSION


 Having overruled all of appellant's points of error, we affirm the trial court's
judgment of conviction.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: May 24, 1995

Publish

1. This offense took place before September 1, 1994 and is governed by the law in effect at
the time the offense occurred. Act of May 26, 1987, 70th Leg., R.S., ch. 573, § 1, 1987
Tex. Gen. Laws 2275, amended by Act of July 18, 1987, 70th Leg., 2d C.S., ch. 16, § 1,
1987 Tex. Gen. Laws 80. Because the code amendments effective September 1, 1994 did not
alter section 22.021 in a manner relevant to this appeal, we cite the current code for sake of
convenience.
2. See, e.g., Norris v. State, 788 S.W.2d 65, 71 (Tex. App.--Dallas 1990, pet. ref'd)
(listing indicia of reliability that the trial court may consider).
3.   Appellant was tried in 1993. The victim testified that he was born on February 6, 1982
and that he was eleven years old at the time of trial. He also testified that appellant sexually
assaulted him when he was "probably seven or eight or nine" and that he first met appellant
when he was "about in second grade" when appellant lived next door. The victim's mother
testified that appellant moved in next door about 1984. Appellant's wife testified that they
bought the property next to the victim's mother's place in 1985 and moved a mobile home
there in 1986. Appellant stated that he moved in next door to the victim in 1985. Further
evidence established that the victim made his initial outcry to his mother in March of 1992.