

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00709-CR

Kayro **MORENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2015CRS001128D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:         Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed: February 26, 2020

AFFIRMED

Kayro Moreno was convicted of continuous sexual abuse of D.C., a child. On appeal, he argues that the trial court erred by (1) allowing bolstering testimony by a State's expert, (2) allowing the jury to consider evidence outside the date range charged in the indictment, and (3) overruling his objection to expert testimony on the victim's symptoms of post-traumatic stress disorder (PTSD). We affirm the trial court's judgment.

## BACKGROUND

Kayro Moreno was the boyfriend of D.C.'s mother when D.C. was very young. D.C. met Moreno when D.C. was almost five years old. When D.C. was six years old, Moreno started to say things to D.C., such as, "You're ugly," and, "Your mom doesn't love you." In 2010, when D.C. was nearly eight years old, Moreno forced D.C. to have sex with him, which hurt her physically and caused her emotional trauma. D.C. testified that Moreno forced her to have sex with him more than fifteen times between the time when she was seven years old (2010) and when she was ten years old (2013).

## BOLSTERING TESTIMONY BY EXPERT

In his first issue, Moreno complains of improper bolstering.

### A.     Additional Background

At trial, the State called Dr. Piña, a forensic psychologist, to testify about his review of D.C.'s case and his interaction with D.C. Dr. Piña testified that D.C.'s account of the events remained consistent throughout the case.

On cross-examination, the defense challenged Dr. Piña's testimony on the ground that Dr. Piña had not watched the video of D.C.'s forensic interview. In his answer, Dr. Piña described his role in a multidisciplinary team meeting, comprised of agencies such as Child Protective Services, law enforcement, medical personnel, and prosecutors, where each agency presented information relevant to a child abuse case. He explained that this meeting allowed the team members an opportunity to test the strength of each case.

Dr. Piña finished his answer by stating that the team did not "want someone to be falsely accused. Or if we're not sure, for myself, beyond a reasonable doubt, there is no doubt in my mind." Moreno objected to Dr. Piña's testimony.

Outside the presence of the jury, Moreno argued that Dr. Piña had improperly commented on D.C.'s credibility and Moreno's guilt by testifying that he was convinced of the case beyond a reasonable doubt. The trial court disagreed that Dr. Piña meant that he was convinced of Moreno's guilt and believed instead that Dr. Piña's testimony more generally referred to the multidisciplinary team's process.

The trial court asked Moreno, "What would you want me to tell them?" Moreno asked that Dr. Piña's beyond-a-reasonable-doubt statement be struck from the record, and for a statement to disregard the struck comment.

The trial court agreed to strike the challenged testimony by instructing the prosecution to not refer to it in closing:

> Certainly, I'll strike it to where the State can't use that testimony in closing or referring back to the witness said, "By way of example, we wouldn't want someone to be falsely accused beyond a reasonable doubt." They can't refer back to that. So I'll strike it from the record in that regard, yes, so it won't be misused.

The court asked if there was anything further, and Moreno said there was not. The trial court did not direct the jury to disregard Dr. Piña's beyond-a-reasonable-doubt testimony, and Moreno neither objected to the omission nor requested a jury instruction on the issue.

## B.     Standard of Review

"Preservation of error is a systemic requirement on appeal." *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (quoting *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)). If an issue has not been preserved for appeal, this court will not address its merits. *Id.*

## C.     Applicable Law

To preserve a claim of error, a party must make a timely request, objection, or motion in the trial court, followed by either a ruling or a refusal to rule by the trial court. *See* TEX. R. APP. P. 33.1(a); *Landry v. State*, 706 S.W.2d 105, 109 (Tex. Crim. App. 1985) (citing *Washington v.*

*State*, 484 S.W.2d 721, 724 (Tex. Crim. App. 1972)). When a trial court refuses (or omits) to rule on an objection, to preserve a claim of error, a party must object to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a); *Taylor v. State*, 148 S.W.3d 592, 596 (Tex. App.—Fort Worth 2004, pet. ref'd); *Lockett v. State*, 16 S.W.3d 504, 506 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Similarly, when a trial court's ruling on an objection is not clear, a party must timely request clarification or risk waiver. *See* TEX. R. APP. P. 33.1(a); *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009); *Lockett*, 16 S.W.3d at 506.

**D.    Analysis**

It is undisputed that the trial court granted Moreno's objection to strike Dr. Piña's beyond-a-reasonable-doubt testimony, but it was silent as to any jury instruction. Moreno did not request any further clarification or change. *See Phillips*, 288 S.W.3d at 883; *Lockett*, 16 S.W.3d at 506. The record shows the trial court resolved the issue by ordering the State not to mention Dr. Piña's beyond-a-reasonable-doubt testimony in closing but not by directing the jury to disregard it.

Moreno did not call the trial court's attention to its failure to direct the jury to disregard Dr. Piña's beyond-a-reasonable-doubt testimony nor did he object to the trial court's failure to give such instruction or, for that matter, seek a clarification of its ruling. *See* TEX. R. APP. P. 33.1(a); *Phillips*, 288 S.W.3d at 883; *Lockett*, 16 S.W.3d at 506. Indeed, after the trial court ordered the State not to use Dr. Piña's comment in closing, Moreno did not pursue the matter further. *See* TEX. R. APP. P. 33.1(a); *Landry*, 706 S.W.2d at 109 (citing *Washington*, 484 S.W.2d at 724).

We conclude that Moreno failed to preserve a claim of error for the trial court's ruling. *See* TEX. R. APP. P. 33.1(a); *Phillips*, 288 S.W.3d at 883; *Landry*, 706 S.W.2d at 109; *Lockett*, 16 S.W.3d at 506. We overrule Moreno's first issue.

**ALLOWING THE JURY TO CONSIDER DATES OUTSIDE THE INDICTMENT**

In his second issue, Moreno argues that the jury charge should have been limited to the dates of continuous sexual abuse listed in the indictment.

**A.      Additional Background**

The State's indictment, presented on August 5, 2015, accused Moreno of Continuous Sexual Abuse of a Child from August 24, 2010, to August 24, 2012.

Before trial, the State asked the court to amend the indictment to include the period of abuse through 2013. Though the State submitted a motion a little more than a year before trial, the State did not make this request in court until after jury selection. The trial court denied the State's motion to amend the indictment but invited the State to argue its case to the jury.

During trial, D.C. testified to abuses that occurred when she was in the second grade (2010) and when she was almost nine years old, about to start fourth grade (2011). She identified a photo of when she was in the second grade as an accurate depiction of when the abuse began (2010). D.C. testified that the abuse stopped when she was ten years old, about to complete fifth grade (2013).

Before the jury was charged, Moreno objected to the jury being permitted to consider evidentiary facts all the way up to indictment presentment on August 5, 2015, arguing that the date discrepancy was too great compared to the indictment range. The trial court ruled that relevant case law supported the discrepancy and that the State could argue to the jury that incidences described in testimony happened "on or about" the dates listed in the indictment.

The charge ultimately read as follows:

> Now if you find from the evidence beyond a reasonable doubt that from on or about the 24th day of August, A.D., 2010 through the 24th day of August, A.D., 2012, and anterior to the presentment of this indictment, in Webb County, Texas, the defendant, KAYRO MORENO, as alleged in the indictment, did then and there during a period that was 30 or more days in

duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, then you will find the defendant guilty of the offense of Continuous Sexual Abuse of a Child as alleged in the indictment.

**B.      Standard of Review**

"We review claims of jury charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)," *superseded on other grounds as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988). *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd) (citing *Swearingen v. State,* 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd)). "Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *see Swearingen*, 270 S.W.3d at 808. "If error exists, we then evaluate the harm caused by the error." *Swearingen*, 270 S.W.3d at 808 (citing *Ngo*, 175 S.W.3d at 743).

To the degree that this issue turns on the sufficiency of the indictment, we review the record de novo. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Pollock v. State*, 405 S.W.3d 396, 403 (Tex. App.—Fort Worth 2013, no pet.).

**C.      Applicable Law**

It is a longstanding rule that the State is not required to prove that an offense was committed on the date alleged in the indictment (whether or not the words 'on or about' are used) but may prove that the offense was committed on any date prior to the return of the indictment and within the period of limitations.

*Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd) (citing *Klein v. State*, 273 S.W.3d 297, 304 n. 5 (Tex. Crim. App. 2008)); *accord Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997).

Continuous Sexual Abuse of Young Child or Children, Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.17, 2007 Tex. Gen. Laws 1120, 1127 (codified at TEX. PENAL CODE ANN. § 21.02), has no period of limitations. TEX. CODE CRIM. PRO. ANN. art. 12.01 (providing "no

limitation" for "continuous sexual abuse of young child or children under Section 21.02"); *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd).[1]

In a continuous sexual abuse case, if evidentiary facts exceed the date range in the indictment, that testimony can be considered to show the continuous nature of the abuse. *See Kuhn*, 393 S.W.3d at 525–29; *Martin*, 335 S.W.3d at 876. Where the record establishes numerous sexual contacts between an accused and a victim that exceed the scope of the indictment, a jury may rationally infer that the date range element of continuous sex abuse has been met. *See Kuhn*, 393 S.W.3d at 525; *Martin*, 335 S.W.3d at 876.

Notice to a defendant to prepare a defense is sufficient if the indictment tracks the statutory language in the continuous sexual abuse statute and describes the various predicate acts of sexual abuse that the defendant is alleged to have committed during a minimum 30-day period. *See Buxton v. State*, 526 S.W.3d 666, 677–83 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Pollock*, 405 S.W.3d at 404 (ruling that the State's allegation that the continuous sexual abuse began on or about a certain date was sufficient to allow the defendant to prepare his defense); *see also Sledge*, 953 S.W.2d at 256 (stating that an indictment alleging that continuous sexual abuse began "on or about" a certain date is sufficient to give the defendant notice of the charge against him).

## D.    Analysis

Here, the State's burden was to prove the elements of the offense within the timeline delineated by its indictment, August 24, 2010, through August 24, 2012. The State was permitted to have D.C. testify to dates that exceeded the indictment timeframe. *See Kuhn*, 393 S.W.3d at

---

[1] The only date limitation would be the effective date for the Continuous Sexual Abuse of a Child statute, September 1, 2007, but no allegations in Moreno's case actually precede that date. *See Gomez v. State*, 459 S.W.3d 651, 660 (Tex. App.—Tyler 2015, pet. ref'd); *Kuhn*, 393 S.W.3d at 524.

529; *Martin*, 335 S.W.3d at 876. By having D.C. testify regarding her abuse from 2010 to 2013, the State necessarily presented evidence of abuse from August 24, 2010, through August 24, 2012.

Notably, Moreno's defense did not depend upon the accuracy of the dates listed in the indictment. He testified that he cared for D.C. from August 24, 2010, until August 24, 2013, but that he did not sexually abuse her. Thus, Moreno placed D.C.'s credibility in issue and not the dates of his interactions with her. Moreno's defense did not suffer from any lack of notice.

We overrule Moreno's second issue.

### EXPERT TESTIMONY ON SYMPTOMS OF PTSD

In his third issue, Moreno complains that the trial court erred by allowing Jennifer Masters to testify as an expert to symptoms of PTSD.

### A.      Additional Background

At trial, the State called Jennifer Masters, a licensed professional counselor (LPC) with fourteen years of experience with abused children, to testify on behaviors of sexually abused children, symptoms of PTSD, and her experience working with D.C. Masters, who at the time of her testimony was the clinical director of the Children's Advocacy Center, testified that, in order to be qualified to do her work, she was required to have a master's degree in psychology or a counseling-related area plus 3,000 hours of supervised training. She also testified that it was not her practice to diagnose clients with PTSD but that she could describe symptoms of the disorder in them. Based on this testimony, the trial court permitted Masters to testify as an expert as long as she did not comment on D.C.'s truthfulness.

Moreno challenged Masters's ability to diagnose PTSD on two alternate grounds: first, that she was not qualified; and second, that her testimony on PTSD would inappropriately bolster D.C.'s testimony. The trial court found Masters's proffered PTSD testimony to be analogous to expert testimony on behaviors or symptoms consistent with child abuse, which it considered to be

admissible testimony. The trial court then allowed Masters to testify as an expert on PTSD but prohibited her from testifying about D.C.'s truthfulness.

Masters testified that she spent about twelve hours counseling with D.C. over the course of several years. She administered the Trauma Symptom Checklist for Children to better understand what symptoms of trauma that D.C. was experiencing. From counseling with D.C., Masters most strongly noted D.C.'s avoidance as a symptom of PTSD. Specifically, D.C. avoided talking to Masters about the abuse by using coping mechanisms such as sarcasm and humor. D.C. also showed anxiety and fearfulness, both symptoms of PTSD.

## B. Standard of Review

"We review the trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard." *Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio 2008, pet. ref'd) (citing *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002)); *see Hinojosa v. State*, 4 S.W.3d 240, 251 (Tex. Crim. App. 1999). We will uphold the trial court's decision as long as it is within the zone of reasonable disagreement, based on the evidence presented and the requirements of Rule 702 of the Texas Rules of Evidence. *See Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)); *Reyes*, 274 S.W.3d at 729 (citing *Sexton*, 93 S.W.3d at 99).

## C. Applicable Law

Admissibility of expert testimony depends on whether a proposed expert possesses "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702; *accord Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993); *Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), *disapproved on other grounds by Cohn v. State*, 849 S.W.2d 817, 818 (Tex. Crim. App. 1993). "No rigid formula exists for determining whether a particular witness is qualified to testify as an

expert." *Duran v. State*, 163 S.W.3d 253, 258 (Tex. App.—Fort Worth 2005, no pet.); *Matson v. State*, 819 S.W.2d 839, 852 n.10 (Tex. Crim. App. 1991). Therefore, the trial court must evaluate a proffered expert's qualifications and weigh their proposed testimony to decide whether it is reliable and relevant to an issue in the case. *See Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999); *Kelly*, 824 S.W.2d at 572.

Psychologists and counselors have been found to provide reliable, relevant testimony in child sexual abuse cases, specifically regarding PTSD. *See Johnson v. State*, 432 S.W.3d 552, 557 (Tex. App.—Texarkana 2014, pet. ref'd); *Zinger v. State*, 899 S.W.2d 423, 432 (Tex. App.—Austin 1995), *rev'd on other grounds*, 932 S.W.2d 511 (Tex. Crim. App. 1996); *but see Lane v. State*, 257 S.W.3d 22 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (disapproving testimony by a social worker that the victim suffered from PTSD due to sexual abuse). Mental health professionals are in a unique position to explain victim behavior as it pertains to a disorder (PTSD) that is not commonly understood among laypersons. *Zinger*, 899 S.W.2d at 432 (citing *Duckett*, 797 S.W.2d at 917). And much like evidence from a physical examination, testimony by a qualified expert that corroborates the occurrence of sexual abuse does not constitute commentary on a victim's credibility because it "does not point a finger" at the accused. *Johnson*, 432 S.W.3d at 556.[2]

---

[2] Unpublished Texas cases approving expert testimony on PTSD and other behavioral indications of abuse in child sexual abuse cases include *Drzymalla v. State*, No. 04-16-00722-CR, 2018 WL 280419 (Tex. App.—San Antonio Jan. 3, 2018, no pet.) (mem. op., not designated for publication) (concluding that testimony by a qualified expert that corroborates the occurrence of sexual abuse does not constitute commentary on a victim's credibility); *Melder v. State*, No. 12-12-00400-CR, 2014 WL 1922570, at *7 (Tex. App.—Tyler May 14, 2014, pet. ref'd) (mem. op., not designated for publication) (ruling that LPCs may diagnose mental but not physical disorders, and that PTSD is a recognized mental disorder), and *Bailey v. State*, No. 2-05-394-CR, 2007 WL 79544, at *6 (Tex. App.—Fort Worth Jan. 11, 2007, pet. ref'd) (mem. op., not designated for publication) (upholding the admissibility of expert testimony about the victim's PTSD and treatment by an experienced licensed social worker and psychotherapist as reliable).

"Bolstering" is an outmoded objection from common law that may fall under Rule 403 if some evidence amounts to improper commenting on a victim's truthfulness. *See Cohn*, 849 S.W.2d at 819–20. The key to admissibility remains the same across these cases: the expert witness must be qualified in their field, use tools and methods from their field, draw conclusions based on those qualifications and methods, and not comment on victim credibility. *See Johnson*, 432 S.W.3d at 557; *Lane*, 257 S.W.3d at 27; *Zinger*, 899 S.W.2d at 432. To that end, a court must be vigilant to exclude testimony that unfairly prejudices a defendant under Rule 403 or that improperly decides an issue for the jury in violation of Rule 702. *See Yount*, 872 S.W.2d at 711; *Cohn*, 849 S.W.2d at 819–20. But an expert's testimony based on specialized knowledge and relevant data that does not directly comment on credibility is unlikely to meet the threshold of undue prejudice, even if it may corroborate the victim's testimony and weigh against the defendant. *See Yount*, 872 S.W.2d at 712 n.9; *see also Cohn*, 849 S.W.2d at 820; *Johnson*, 432 S.W.3d at 556.

**D.    Analysis**

Here, the trial court qualified Masters as an expert (for the subjects she testified to having experience with) based on her advanced degree, supervisory position of therapy at the Children's Advocacy Center, and fourteen years of experience. *See* TEX. R. EVID. 702; *Yount*, 872 S.W.2d at 709; *Duckett*, 797 S.W.2d at 914. Furthermore, the trial court considered Masters's proffered testimony to be relevant based, in part, on the fact that her expertise was in working with child victims of sexual abuse.

Masters relied on an assessment tool and her training and experience to describe D.C.'s experience as symptomatic of trauma, and she did not directly comment on D.C.'s truthfulness. *See Johnson*, 432 S.W.3d at 556; *Zinger*, 899 S.W.2d at 432; *see also Cohn*, 849 S.W.2d at 818. Masters's testimony helped place D.C.'s behavior and symptoms in the context of child sexual

trauma assessment, which could help the jury determine what weight and credibility to give to D.C.'s testimony. *See Johnson*, 432 S.W.3d at 554; *Zinger*, 899 S.W.2d at 432.

Adopting the reasoning from *Johnson* and *Zinger*, we conclude that it was up to the jury to decide if the symptoms that Masters described really did help them understand the victim's testimony and demeanor and whether these apparent symptoms actually reflected prior trauma caused by Moreno. *See Johnson*, 432 S.W.3d at 554; *Zinger*, 899 S.W.2d at 432.

Having considered the evidence in light of Rule 702 and the applicable case law, we conclude that the trial court's decision to admit Masters's testimony on PTSD was within the zone of reasonable disagreement. *See* TEX. R. EVID. 702; *Johnson*, 432 S.W.3d at 556; *Zinger*, 899 S.W.2d at 432. We overrule Moreno's third issue.

## CONCLUSION

Because Moreno failed to ask the trial court for clarification or for a jury instruction to disregard Dr. Piña's beyond-a-reasonable-doubt testimony after the trial court ordered the State not to refer to it, Moreno failed to preserve a claim of error for improper bolstering.

Next, because the State may present evidence that exceeds the date of the indictment up to the date of its presentment to the defendant in cases of Continuous Sexual Abuse of a Child, Moreno's complaint that the jury charge allowed the jury to improperly consider evidence past the date in the indictment is overruled.

Finally, because the trial court's admission of expert testimony regarding the victim's PTSD symptoms is supported by the record and relevant case law, Moreno's complaint regarding the reliability and relevance of Jennifer Masters's testimony is overruled.

We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Publish