TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00300-CR







William Zinger, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0923659, HONORABLE FRED A. MOORE, JUDGE PRESIDING







 Appellant William Zinger was convicted in a jury trial of the offense of aggravated sexual
assault of a child. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 1998). The jury assessed
appellant's punishment at imprisonment for life and a fine of $10,000. Appellant asserts that the evidence
is neither legally nor factually sufficient to support the jury's verdict and that the trial court erred in admitting
in evidence the victim's outcry statement. We will overrule appellant's points of error and affirm the
judgment of the trial court.

 A prior conviction for this offense was affirmed. See Zinger v. State, 899 S.W.2d 423
(Tex. App.--Austin 1995). The Court of Criminal Appeals granted appellant's petition for discretionary
review and reversed the judgment. See Zinger v. State, 932 S.W.2d 511 (Tex. Crim. App. 1996). This
is an appeal after retrial.

 The legal sufficiency of the evidence is raised by appellant's second point of error. In
reviewing the legal sufficiency of the evidence, the test is whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Staley v. State,
887 S.W.2d 885, 888 (Tex. Crim. App. 1994); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988).

 It was alleged, and the jury was instructed that to find appellant guilty it must find, that: 
"William Zinger on or about the 16th day of August, 1991, . . . did then and there knowingly or intentionally
cause the penetration of the anus of [the named victim], a child younger than 14 years of age and not his
spouse, by his penis . . . or did then and there knowingly or intentionally cause the anus of [the named
victim], a child younger than 14 years of age and not his spouse, to contact the sexual organ of the said
William Zinger."

 Appellant lived in a house trailer located on property adjacent to the house where the victim
lived with his mother, his sister, and his mother's male-friend. Appellant conducted a construction business
and kept trucks, bulldozers, and other machinery and equipment on the site where he lived. When the
victim was three or four years old, he became fascinated by appellant's trucks and machinery. Over the
course of several years the victim and appellant became friends. They attended movies, played putt-putt
golf, and together enjoyed other activities. The victim received gifts from appellant including a BB gun. 
Appellant took the victim back and forth to school and sponsored him in Boy Scout activities. When he
was between seven and nine years old, the victim began spending weekend nights with appellant in his
house trailer. Appellant had a water bed, in which they both would sleep. We quote from the statement
of facts:


Q: I want you to tell the jury about what started happening to you when you would
spend the night at Bill Zinger's house and y'all would sleep together in the water bed.


A: When I would go to sleep, he would pull my shorts off and my underwear and my
shirt off and he would put Vaseline on his penis and then he would put it in between
my -- he would put it in between my -- he would put it in between my butt cheeks
and --


* * * * *



Q: And while this was going on, you were between seven and nine?


A: Yes, sir.


Q: Before we go more into it, [victim's name], about how many times, if you recall, did
this happen to you with him getting in bed with you and putting his penis between your
butt cheeks and other things?


A: More than 10.


Q: You don't remember the exact number that it happened?


A: No, sir, I don't.


* * * * *



Q: How did you feel emotionally? Was it easy for you to believe he was doing this to
you? What was going through your mind when it first started happening?


A: I was scared.


Q: Why were you scared?


A: Because he showed me all his guns and I figured if I was to say anything, he would
do something to me.


* * * * *



Q: You talked about him placing his penis between your butt cheeks. Would he do
anything else to you when he was in bed with you?


A: Yes, sir.


Q: [Victim's name], would you tell the jurors the other things that he would do to you in
bed?


A: He would try to kiss me with his tongue and he would -- sometimes I would be on
my back, he would pull me over or I would be on my stomach and he would roll me
over and do other things with me and he would lay on top of me.


Q: [Victim's name], what would you do while he was doing these things to you?


A: I would pretend like I was asleep.


Q: Did you ever jump up and say stop doing that to me?


A: No, sir.


Q: Why didn't you, [Victim's name]?


A: I was too scared.


Q: [Victim's name], did he ever put his penis inside of you.


A: What do you mean inside?


Q: Inside your anus?


A: I believe he tried to.


Q: Did you ever feel it go inside your anus, any part of his penis go inside your anus?


A: Yes, sir.


Q: Do you recall how many times you felt that?


A: No, sir.


Q: Was it more than one time, though?


A: Yes, sir.


* * * * *



Q: Why didn't you just tell your mother after he did this to you?


A: I was too scared.


Q: Were you scared of your mother?


A: No, I was scared that he might do something with his guns to me.


* * * * *



Q: By your butt, are you talking about your anus, also?


A: Yes, sir.


Q: I believe it is your testimony also that at least some part of his penis penetrated your
anus, also?


A: Yes, sir.


Q: And you have identified the person who did this to you as the defendant in this case,
Bill Zinger?


A: Yes, sir.



 The victim's outcry statement through the testimony of the victim's mother was admitted. 
A physician, who had examined the victim, testified that "this examination was consistent with his history
of having had previous rectal penetration." Although some of the victim's testimony was elicited by leading
questions, to which there were no objections, his testimony furnishes evidence legally sufficient to support
the jury's verdict. Appellant's second point of error is overruled.

 Factual insufficiency of the evidence is raised by appellant's third point of error. In
reviewing factual insufficiency of the evidence we view all the evidence without the prism of in the light most
favorable to the prosecution and set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996). Clewis approved this standard of review first articulated in Stone v. State, 823 S.W.2d 375,
381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). More recently the Court of Criminal Appeals has
admonished: "We emphasize that in performing a factual sufficiency review, the courts of appeals are
required to give deference to the jury verdict, examine all of the evidence impartially, and set aside the jury
verdict 'only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.'" Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting Clewis, 922 S.W.2d
at 129).

 Appellant, a fifty-nine year old landscaping contractor, testified in his own defense and
offered the testimony of two witnesses who testified that appellant's reputation in the community for truth
and veracity was good. Appellant gave, point by point, his version and explanation of his relationship with
the victim and the victim's family concerning the matters raised by the State's evidence. Appellant, who
had been active in community affairs, in the local chamber of commerce, and served two terms on the
Jonestown City Council, denied all of the criminal acts charged against him. We have applied the standard
of review required by Cain, Clewis, and Stone; after examining all of the evidence impartially and giving
proper deference to the jury's verdict, we conclude that the evidence is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong or unjust. We hold that the evidence is
factually sufficient to support the jury's verdict; we overrule appellant's third point of error.

 In his first point of error, appellant complains that the trial court erred in allowing the
victim's mother, the outcry witness, to testify at trial in violation of Article 38.072 Section 2. Appellant's
specific complaints are that (1) the State failed to give timely notice that the victim's outcry statement
would be offered in evidence, and (2) the trial court abused its discretion in allowing the outcry witness to
testify because the outcry statement was unreliable hearsay.

 The State, if intending to offer an outcry statement in evidence, must notify the defendant
of that intention on or before the 14th day before the day the proceeding begins. Tex. Code Crim. Proc.
Ann. art. 38.072, § 2(b)(1) (West Supp. 1998). Before appellant's retrial began, the State gave appellant
notice of its intention to offer in evidence the victim's outcry statement made to his mother, but that notice
was given less than 14 days before the retrial began. However, in the first trial appellant had been given
timely notice, and the State offered and the court admitted the victim's outcry statement.

 The purpose of the statutory notice provision is to prevent surprise to a defendant. 
Fetterolf v. State, 782 S.W.2d 927, 930 (Tex. App.--Houston [14th Dist.] 1989, pet. ref'd). The
record of retrial shows appellant's counsel "had the transcript of the first trial." That transcript included the
timely-filed notice required by the statute. Moreover, this Court's published opinion reviewing the first trial
fully discussed the admission of the same outcry statement that was admitted on retrial. Counsel in the
retrial, in reasonable preparation for trial, would have become familiar with the appellate opinions from the
appeal of the first trial. Therefore appellant and his counsel should not have been surprised that the State
would offer in evidence the victim's outcry statement made to his mother. The notice was sufficient to meet
the requirements of the statute. See Alvarado v. State, 817 S.W.2d 738, 740 (Tex. App.--San Antonio,
pet. ref'd); Fetterolf, 782 S.W.2d at 730.

 Appellant argues that the outcry statement is unreliable because it was made in two parts
and was not spontaneous but elicited through interrogation by the victim's mother. Appellant correctly
states that the trial court's findings of reliability of an outcry witness's testimony is reviewed for an abuse
of discretion. See Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). On the first appeal, this
Court observed that it would be impossible for us in our judicial capacity to set a specific time period over
which a child's outcry must be completed. See Zinger, 899 S.W.2d at 430. We held that the trial court
properly admitted the testimony of the outcry made by the child in "one continuous story over three days"
because all of the statements were part of one initial outcry. See id. We adhere to our holding on the first
appeal even though the record on retrial shows the statement was made over a period of 13 days rather
than three days. See Moon v. State, 856 S.W.2d 276, 281 (Tex. App.--Fort Worth 1993, pet. ref'd)
(statement made over the course of several weeks); Norris v. State, 788 S.W.2d 65, 68-69 (Tex.
App.--Dallas 1990, pet. ref'd). Here the record shows the victim told his mother that he needed to talk
to her; he then voluntarily told her what appellant had done to him. He told her that while he was spending
the night with appellant, appellant had placed vaseline on his own penis, laid on top of the victim, and
placed his penis on the victim's butt. The concerned mother arranged an appointment for her son with a
psychiatrist. Before going to see the psychiatrist thirteen days later, the victim's mother told him that "he
was going to be going through a lot" and that if anything else had happened the doctors needed to know. 
The victim's mother testified that the victim then told her "he had been penetrated through the rectum" by
appellant. We conclude appellant has failed to show that the outcry statement was unreliable or that the
trial court abused its discretion in admitting the statement. Appellant's first point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Yeakel, Justices Kidd and Dally*

Affirmed

Filed: April 16, 1998

Do Not Publish





* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



's retrial began, the State gave appellant
notice of its intention to offer in evidence the victim's outcry statement made to his mother, but that notice
was given less than 14 days before the retrial began. However, in the first trial appellant had been given
timely notice, and the State offered and the court admitted the victim's outcry statement.

 The purpose of the statutory notice provision is to prevent surprise to a defendant. 
Fetterolf v. State, 782 S.W.2d 927, 930 (Tex. App.--Houston [14th Dist.] 1989, pet. ref'd). The
record of retrial shows appellant's counsel "had the transcript of the first trial." That transcript included the
timely-filed notice required by the statute. Moreover, this Court's published opinion reviewing the first trial
fully discussed the admission of the same outcry statement that was admitted on retrial. Counsel in the
retrial, in reasonable preparation for trial, would have become familiar with the appellate opinions from the
appeal of the first trial. Therefore appellant and his counsel should not have been surprised that the State
would offer in evidence the victim's outcry statement made to his mother. The notice was sufficient to meet
the requirements of the statute. See Alvarado v. State, 817 S.W.2d 738, 740 (Tex. App.--San Antonio,
pet. ref'd); Fetterolf, 782 S.W.2d at 730.

 Appellant argues that the outcry statement is unreliable because it was made in two parts
and was not spontaneous but elicited through interrogation by the victim's mother. Appellant correctly
states that the trial court's findings of reliability of an outcry witness's testimony is reviewed for an abuse
of discretion. See Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). On the first appeal, this
Court observed that it would be impossible for us in our judicial capacity to set a specific time period over
which a child's outcry must be completed. See Zinger, 899 S.W.2d at 430. We held that the trial court
properly admitted the testimony of the outcry made by the child in "one continuous story over three days"
because all of the statements were part of one initial outcry. See id. We adhere to our holding on the first
appeal even though the record on retrial shows the statement was made over a period of 13 days rather
than three days. See Moon v. State, 856 S.W.2d 276, 281 (Tex. App.--Fort Worth 1993, pet. ref'd)
(statement made over the course of several weeks); Norris v. State, 788 S.W.2d 65, 68-69 (Tex.
App.--Dallas 1990, pet. ref'd). Here the record shows the victim told his mother that he needed to talk
to her; he then voluntarily told her what appellant had done to him. He told her that while he was spending
the night with appellant, appellant had placed vaseline on his own penis, laid on top of the victim, and
placed his penis on the victim's butt. The concerned mother arranged an appointment for her son with a
psychiatrist. Before going to see the psychiatrist thirteen days later, the victim's mother told him that "he
was going to be going through a lot" and that if anything else had happened the doctors needed to know. 
The victim's mother testified that the victim then told her "he had been penetrated through the rectum" by
appellant. We conclude appellant has failed to show that the outcry statement was unreliable or that the
trial court abused its discretion in admitting the statement. Appellant's first point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice