# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00508-CR

**Richard Gerard Garza, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT**
**NO. 9034180, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Richard Gerard Garza of aggravated sexual assault of a child and, after finding two enhancement paragraphs were true, sentenced him to life imprisonment. *See* Tex. Pen. Code Ann. § 22.021 (West Supp. 2006). On appeal, Garza complains that the trial court erroneously allowed the State to offer character evidence at the guilt/innocence phase of trial, admitted hearsay evidence, and denied his motions for mistrial. We affirm the trial court's judgment.

## Factual Background

Garza does not attack the sufficiency of the evidence supporting his conviction. Therefore, only a brief recitation of the facts is necessary to provide context for his complaints. M.C., who was nine at the time of the attack, testified that on February 21, 2004, she walked past a green, four-door car on her way to Zavala Elementary, where she was in third grade. She identified Garza as the driver of the car and said that Garza told her he was looking for his son's school and

asked her to get into his car to help him find the school. After M.C. got in the car, Garza told her to get into the back seat and then started rubbing her legs and saying he was not going to hurt her. He parked the car, got into the back seat with her, and locked the doors. He undressed, took off M.C.'s pants and underwear, and got on top of her. M.C. said Garza's "private" went inside her "private" and that he moved up and down. After he stopped, he pulled her pants up and drove her back near her school. She then went to the principal's office and reported that she had been raped. The police were called, and M.C. described her assailant and his car, saying that he had a tattoo of the Texas Capitol on his right arm. Garza has a number of tattoos on both arms and a Texas Capitol tattoo on the right side of his torso. Garza's DNA matched semen found on M.C.'s underpants.

**Character Evidence**

In his first point of error, Garza complains that the trial court erroneously allowed the State to offer bad-character evidence. Specifically, Garza complains that the State's questioning of Detective Scott Ogle raised the specter of "another case" in which the police investigated Garza as a suspect, leaving the jury with the impression that there was unexplained evidence of Garza's bad character. This, he argues, requires reversal of his conviction. We disagree.

Detective Ogle was called to testify about an interview he had with Garza on the evening of February 21, the same day M.C. was attacked. Outside the jury's presence, Ogle explained that several days before M.C. was assaulted, he attempted to contact Garza about a different incident that had occurred at Blackshear Elementary School. Ogle testified that the Blackshear matter, involving the possible solicitation of a minor, was being investigated by Child Protective Services, and was not under investigation as a criminal offense. Ogle asked Garza to call

2

to make an appointment, and Garza cooperated and came to Ogle's office for an interview on February 21, the same day that M.C. was attacked. Ogle interviewed Garza and took some photographs of him. Toward the end of their conversation, Garza mentioned that the police had been to his workplace that morning about the Zavala matter; Ogle told Garza that he did not think Garza was a suspect in the Zavala case, and Garza was allowed to leave.

Before the jury, Ogle testified that two days before M.C. was attacked, he left his card at Garza's workplace and asked that Garza call him. Garza called the next day and arranged to speak to Ogle on February 21. During their interview, Ogle looked at Garza's car and took photographs of Garza and his car. Ogle testified that at the time of the interview, he knew that M.C. had been assaulted, although he was not the lead investigator on that case, and that she said her attacker had a tattoo of the Texas Capitol on his arm. Ogle testified that he initially ruled Garza out as a suspect because the partial license plate given by witnesses in M.C.'s case was "very different" from Garza's and because Garza did not have a tattoo of the Texas Capitol on either arm. Ogle was asked whether, if he had known that Garza had a tattoo of the Texas Capitol on his stomach, he would have eliminated Garza as a suspect, and Ogle answered, "Not at all." The State asked him to explain, and he said, "When you were asking as a suspect in the Zavala case?" He then explained that "a victim or witness can certainly confuse the position of the tattoo or someone else's physical description and that would be significant."

Throughout Ogle's testimony, Garza's attorneys repeatedly objected and moved for a mistrial, arguing that Ogle's testimony implied that Garza was under suspicion for another "bad act" other than M.C.'s attack. The State argued that Ogle's testimony was important because his

3

photographs showed Garza's appearance on the day of M.C.'s assault and because it explained that the police did not initially consider Garza to be a suspect in M.C.'s assault because he did not have a tattoo of the Texas Capitol on his arm; the police did not learn that Garza had such a tattoo on his stomach until about a week after the attack. Garza's attorneys argued that "when [Ogle] mentions the Zavala case, it naturally presupposes there's another case" and that:

> essentially what has been done is to put in an extraneous offense without calling it an extraneous offense by the [fact that a] detective of child abuse goes to his work. Then after he goes to his work, he leaves the card and he asks him to come visit him at the child abuse unit. Then he says it's not in connection with the Zavala case. And then he talks about the car, the idea of taking pictures of the car, which then goes further to put in the jury's mind without saying that he's being looked at in another deal, which is exactly what the purpose was in going it.

The court cautioned the State to avoid any reference to Blackshear Elementary, "another matter," or "another incident," asking the State to instruct Ogle only to say that he wanted to speak to Garza, but not to try to explain why. The court overruled Garza's motions for a mistrial. On appeal, Garza specifically complains about Ogle's reference to "the Zavala case," which Garza contends "pollute[d] the trial with reference to the existence of another 'case.'"

The rules of evidence provide that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, such evidence may be admissible to show motive, opportunity, intent, preparation, plan, identity, knowledge, or absence of mistake or accident. *Id*. Generally, a defendant objecting to the improper admission of evidence should first object, then request an instruction to disregard, and, finally, move for a mistrial if he believes the instruction to disregard was not sufficient. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). We will not reverse for

4

evidentiary error that could have been prevented by timely objection or cured by a jury instruction when the complaining party did not seek those lesser remedies from the trial court. *Id*. at 70. That sequence is not absolutely necessary, however, and a defendant may still complain on appeal that he should have been granted a mistrial due to the improper admission of evidence to which he did not object or for which he did not seek an instruction to disregard. *Id*. at 69-70. In such a case, our review "is limited to the question whether the trial court erred in not taking the most serious action of ending the trial." *Id*. at 70. "Mistrial is a remedy appropriate for a narrow class of highly prejudicial and incurable errors," and is necessary only if the evidence clearly prejudices the defendant and "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). We review a trial court's refusal to grant a mistrial under an abuse of discretion standard. *Id*.

Garza did not seek an instruction to disregard Ogle's reference to "the Zavala case"; he asked only for a mistrial. The court was careful with Ogle's testimony, frequently excusing the jury and seeking clarification outside the jury's hearing, cautioning Ogle and the State to avoid any reference to Blackshear or other matters or incidents. The substance of Ogle's testimony before the jury is not of such a nature that a mistrial was required. Ogle testified only that he interviewed Garza the day of M.C.'s assault and did not believe him to be a suspect because Garza did not have a tattoo of the Texas Capitol on either arm. Any inference of other bad acts raised by the phrase "the Zavala case" is slight, and Garza has not shown that an instruction to disregard would not have been effective to cure any error. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) ("It is

5

well-settled that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind."). The trial court did not err in refusing Garza's motions for a mistrial in response to Ogle's testimony. We overrule Garza's first point of error.

In his second point of error, Garza argues that the trial court erred in denying his motion for mistrial made after a police witness stated that he interviewed Garza in jail. He argues that the reference to his status as a prisoner "impugned [Garza's] character."

Police detective and forensic artist Gary Zumwalt testified that he met with M.C. and drew a sketch of her attacker based on her description. She told him that her assailant had a tattoo of "a capitol and a dome" on his arm. Later that day, an officer with the school district's police department contacted Zumwalt and said that M.C.'s parents had provided Garza's name as a possible suspect. Zumwalt went to see Garza and took photographs of the tattoos on Garza's arms, then asked if Garza had other tattoos elsewhere. Garza said he was tattooed on his back and stomach and raised his shirt to show Zumwalt those tattoos, at which time Zumwalt saw a tattoo of the Texas Capitol dome on the right side of Garza's stomach. At the conclusion of Zumwalt's testimony, the State asked, "Detective Zumwalt, just for the record, is the person who you went to see in the jail, will you point him out for the record, please?" Garza's attorney asked to approach the bench, where he pointed out the "in the jail" comment and moved for a mistrial "because now they're wondering

why is he in jail."[1]  The court denied the motion for a mistrial and instead instructed the jury to disregard the State's comment.

Garza argues that the State's question injected a suggestion that Garza was "a person of bad character, one who had to be held in custody pending his trial," and infringed on his right to be presumed innocent.  We disagree.  Garza has not shown that any error in the question was not cured by the trial court's instruction to disregard.  *See Kemp*, 846 S.W.2d at 308.  Nor was the State's error of such magnitude that it was "highly prejudicial and incurable."  *See Wood*, 18 S.W.3d at 648. Therefore, the trial court did not err in refusing to grant a mistrial based on the State's remark.  We overrule Garza's second point of error.

## Outcry Witness Testimony

In his third and final point of error, Garza argues that the trial court improperly admitted hearsay evidence when it allowed Cyndi Cantu to testify about M.C.'s description of the assault.  Garza objected to Cantu's testimony, arguing that a nurse and the school principal had already testified as to what M.C. said had happened to her.  The State argued that Cantu's testimony was part of M.C.'s "continuous outcry" after the assault, because Cantu was the first witness that M.C. told "about the penetration, and that is a separate and independent offense."

Cantu testified that she is a forensic interviewer at the Center for Child Protection and that she interviewed M.C. several days after the assault.  M.C. told Cantu that her assailant "touched

---

[1] Earlier in the trial, the State specifically said that it was not going to bring up the fact that Zumwalt interviewed Garza in jail.  After Garza's objection, the State apologized and said that the mention of jail was inadvertent.

her middle part with his middle part[,] explaining to me that both of them had their clothes down so it was skin-to-skin contact. She also told me that his middle part was inside of her middle part, and later went on to tell me that her middle part hurt as a result of this." Before Cantu testified, Dusty Hesskew, a police officer for the school district's police department, Nancy Maniscalco, assistant principal at Zavala Elementary School, and Stephanie Stager, nurse at Brackenridge Hospital, had testified about M.C.'s outcry of sexual assault. Hesskew testified that the principal of Zavala Elementary told him that a girl "was reporting that a man had sexually assaulted her." Hesskew spoke to M.C., who told him that her attacker had touched her on her leg and that he took off her clothes and got on top of her. M.C. denied that he had touched her genitals, but Hesskew said that "it was like she really didn't want to tell me what happened." After M.C. was examined by a nurse, the nurse told Hesskew "that she did find some bruising and some—that it appeared to her that a sexual assault did occur." Maniscalco testified that M.C. told her, "I've been raped." M.C. told Maniscalco that her attacker touched her with his hands, but did not say where he touched her. Instead, she "patted" her thighs, stomach, torso, and inner thighs. Maniscalco asked M.C. if he had "touched her anywhere else with any other part of his body, and she said no, but she really—she was hesitating." Finally, Stager testified that she examined M.C. at the emergency room on the morning of her attack. M.C. told Stager that her assailant "touched my legs and got on top of me. He pulled my pants down and got on top of me." Stager observed a scratch or abrasion on M.C.'s interior labia minora, which indicated penetration. The State filed a notice of intent to introduce outcry statement, stating that it intended to call Hesskew, Maniscalco, Stager, and Cantu to testify as to M.C.'s outcry of the assault and summarizing how it expected each witness to testify.

8

Hearsay is generally not admissible, unless allowed by statute or an exception to the hearsay rule. Tex. R. Evid. 802. In the case of sexual assault against a child, hearsay explaining the child's description of the assault may be admitted under certain circumstances. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West 2005). A child's out-of-court statement to the first adult "to whom the child made a statement about the offense" is admissible if the defendant is given notice that the State plans to offer the statement, the trial court finds that the statement is reliable, and the child testifies or is available to testify. *Id*. A trial court has broad discretion to determine whether a witness may be considered an outcry witness. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g).

This Court has upheld the admission of multiple outcry statements, made over a period of time to the same witness, explaining that such statements make up a "continuous story" amounting to one, continuing outcry statement. *Zinger v. State*, 899 S.W.2d 423, 430 (Tex. App.—Austin 1995), *rev'd on other grounds*, 932 S.W.2d 511 (Tex. Crim. App. 1996). And, as our sister court has observed, "Because of the way in which the statute is written, an outcry witness is not person-specific, but event-specific. Before more than one outcry witness may testify, however, the outcry must be about different events, and not simply a repetition of the same event as related by the victim to different individuals." *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd); *see Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd). There may be more than one outcry witness if each witness testifies about different events; there may be only one outcry witness about a "single event." *Broderick*, 35 S.W.3d at 73.

9

In this case, the State alleged in the indictment that Garza penetrated M.C.'s sexual organ, contacted her sexual organ with his penis, touched her genitals, caused her to touch his genitals, and exposed himself to her. M.C. told Maniscalco, Hesskew, and Stager that she had been "raped," that her assailant had taken off her clothes and climbed on top of her, and that he had touched her leg. Not until she talked to Cantu several days later did she admit to penetration or contact with Garza's genitals. Therefore, although M.C. told other witnesses that Garza had taken off her clothes and climbed on top of her, it was her statement to Cantu that described the penetration as alleged in the indictment. Therefore, the trial court did not abuse its discretion in determining that Cantu's statement should be admitted as an outcry statement. *See Turner*, 924 S.W.2d at 183 ("Although she told the counselor that appellant penetrated her vagina with his finger, the victim did not tell the counselor that appellant penetrated her with his penis. Officer Miller testified that the victim told him that appellant penetrated her vagina with his penis. Therefore, the record reflects that Officer Miller was the first person over the age of 18 the victim told about the offense as alleged in the indictment.").

Further, even if there was error in allowing Cantu's testimony, we hold that such error was harmless. *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (admission of improper hearsay evidence analyzed as non-constitutional error, and must be disregarded unless it affects defendant's "substantial rights"). We will not reverse for non-constitutional error if we have "fair assurance," after examining the entire record, that the error did not have a "substantial *and* injurious effect or influence" on the jury's verdict. *Id*.

The hearsay about which Garza complains is Cantu's testimony that M.C. told her that her assailant had touched her "middle part with his middle part," meaning skin-to-skin contact, and that his "middle part was inside of her middle part" and felt "nasty." M.C. herself testified that Garza's "private" was inside hers, Stager testified that she found a scratch inside M.C.'s labia minora, and there was testimony that semen found in M.C.'s underpants matched Garza's DNA. Therefore, any error in allowing Cantu to testify that M.C. said that Garza penetrated her sexual organ was harmless in light of the other evidence demonstrating the same fact. We therefore overrule Garza's third point of error.

### Conclusion

We have held that the trial court did not abuse its discretion in refusing to grant Garza's motions for a mistrial. We have further held that the trial court did not abuse its discretion in allowing Cantu to testify as an outcry witness and, even if such testimony was admitted erroneously, that the testimony was harmless in light of the entire record. Having overruled Garza's points of error, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   September 21,2006

Do Not Publish

11