**Affirmed and Opinion Filed March 18, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**
No. 05-22-00429-CR

**KALLIE WRIGHT, APPELLANT**
**V.**
**THE STATE OF TEXAS, APPELLEE**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F18-30193-U**

## MEMORANDUM OPINION

Before Justices Garcia, Goldstein and Miskel
Opinion by Justice Miskel

Kallie Wright appeals her sentence for failing to stop and render aid after she drove a car into, and killed, bicyclist Calvin Middleton Jr. in July 2018. TEX. TRANSP. CODE ANN. § 550.021(c)(1)(A). The jury convicted Wright and set punishment at twelve years in prison. In three issues, Wright argues the trial court abused its discretion in (1) admitting evidence of her at-home breath alcohol monitoring device reports, (2) taking judicial notice of notifications from the pre-trial services department, and (3) failing to include a required jury instruction.

We affirm the trial court's judgment.

## I. Factual Background

Early the morning of July 15, 2018, Wright was driving her friend Dana Jordan's car after the two spent the prior day and that night drinking alcohol, smoking marijuana, and celebrating Jordan's birthday at a strip club. On a highway intersection in Grand Prairie, Texas, Wright drove the car into bicyclist Calvin Middleton Jr. Wright immediately drove away from the collision scene. Middleton was seriously injured and died on the roadway. Wright eventually drove back to the scene and asked a bystander whether Middleton had died. After Wright and witnesses heard what sounded like gunshots, Wright again drove away in Jordan's car and was absent from the scene when police arrived. Wright did not phone 9-1-1 or provide anyone with her name, address, vehicle registration, or car insurance information. The record reflects that Wright drove the wrecked car to a third-party's home. When the police located the car, the bloody and shattered car windshield had been removed.

After police found the wrecked car, identified the parties involved in the fatal collision, and investigated the possible attempted coverup, the U.S. Marshals Service communicated with Wright. She later turned herself in to the Marshals on the evening of July 18, 2018. Wright was arrested on the charge of leaving the scene of an accident without rendering aid. She posted bond and was released.

Less than four months later, while out on bond, Wright was stopped for speeding in Tarrant County and arrested for DWI and illegal drug possession. During that traffic stop, Wright told the officer that "she had been on the news and that she ran a gentleman over and killed him." The jury viewed the officer's bodycam recording of Wright making this statement. Wright appeared to be intoxicated and had marijuana in the car. Wright was arrested for DWI and possession of marijuana and was released from jail after posting bond for the new charges. As a condition of her pretrial release on the two new charges, Wright was ordered to undergo home breath-alcohol monitoring.

Following a multi-day trial, the jury convicted Wright of failing to stop and render aid after the fatal Middleton incident. At the punishment phase, over Wright's objection, the trial court admitted as State's Exhibit 99 records from Wright's at-home alcohol monitoring device. Also over Wright's objections, the trial court took judicial notice of four notification letters from the Dallas County pre-trial services department: (1) Exhibit 100, a notification of Wright's failure to comply with her Dallas County bond conditions requiring that she not consume alcohol as detected by her at-home alcohol monitoring system[1]; (2) Exhibit 101, a notification of Wright's failure to comply with her Dallas County bond conditions that required her

---

[1] Although the title refers to an interlock order, the records do not refer to an ignition interlock device in her car, but rather a SCRAM continuous alcohol monitoring device.

to service the at-home breath testing device and her removal from the alcohol monitoring program; (3) Exhibit 102, a notification to the Dallas County trial court of Dallas County pretrial services' termination of Wright's supervision on bond for failure to report (while a warrant was out for her arrest); and (4) Exhibit 103, a notice to the Dallas County trial court of Wright's pretrial bond supervision suspension in her Tarrant County DWI case because of Wright's active arrest warrant for more than ninety days and her unknown whereabouts.

## II.    The Alcohol Monitoring Device Records Are Not Hearsay or Testimonial.

In her first issue, Wright challenges the trial court's admission of State's Exhibit 99 under the business records exception to the hearsay rule. *See* TEX. R. EVID. 803(6), 902(10).   Additionally, Wright contends the records contained testimonial statements that violated her rights under the Confrontation Clause of the Sixth Amendment.

We overrule Wright's hearsay and Confrontation Clause challenges because these computer-generated monitoring records do not constitute hearsay and are nontestimonial.  The reports do not implicate Wright's entitlement to confront a testifying witness.

## A.    Standards of Review

We review a trial court's admission or exclusion of evidence under the abuse of discretion standard of review.  *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).   So long as the trial court's decision falls within the "zone of

4

reasonable disagreement," we must uphold the decision. *Id.* We do not disturb a trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

As to an alleged violation of a defendant's confrontation rights, the standard of review is a hybrid one: both deferential and *de novo*. *Mason v. State,* 225 S.W.3d 902, 906–07 (Tex. App.—Dallas 2007, pet. ref'd). "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.,* whether a statement is testimonial or nontestimonial, *de novo*." *Wall v. State,* 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

## B.     The Computer-Generated Records Are Not Hearsay.

"Hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). A "declarant" means a person. TEX. R. EVID. 801(b). Likewise, a "statement" means a *person's* oral, written, or nonverbal expression. TEX. R. EVID. 801(a) (emphasis added). Data generated by a machine, instead of by a person, is not a "statement" by a "declarant," nor is it hearsay. *See, e.g.*, *Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.) (en banc) ("The intoxilyzer instrument is a computer, not a person. By definition, therefore, the intoxilyzer is not a declarant."); *Ly v. State*, 908 S.W.2d 598, 600 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ("A computer self-

5

generated printout that does not represent the output of statements placed into the computer by out of court declarants is not hearsay . . . . Because there is no reliance upon human input, the determination that such computer self-generated data is not hearsay is in accord with rule 801."); *Murray v. State*, 804 S.W.2d 279, 284 (Tex. App.—Fort Worth 1991, pet. ref'd) ("This distinction between computer stored data, which is clearly hearsay, and computer self-generated data, which . . . is not hearsay, is in accord with Rule 801, which requires that a statement by [sic] made by a *person* before it can fall within the definition of hearsay."); *Nguyen v. State,* No. 05-20-00241-CR, 2022 WL 3714494, at *8 (Tex. App.—Dallas Aug 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("We conclude the crash data report constitutes computer-generated data containing objectively recorded facts. The black box of appellant's vehicle is a computer and, by definition, cannot be a declarant for purposes of the rule against hearsay."). Therefore the trial court did not err by overruling Wright's hearsay objection.

## C. The Computer-Generated Records Are Not Testimonial and Do Not Implicate the Confrontation Clause.

A criminal defendant has a Sixth Amendment right to question witnesses offering testimony against him. U.S. CONST. amend. VI; *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006). "Even when hearsay offered against a defendant is admissible under evidentiary rules, that evidence may implicate the Confrontation Clause of the Sixth Amendment if the defendant is not afforded the

6

opportunity to confront the out-of-court declarant." *Gonzalez*, 195 S.W.3d at 116. However, the Confrontation Clause applies only to statements that are testimonial in nature. *See Woods v. State*, 152 S.W.3d 105, 113–14 (Tex. Crim. App. 2004) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

Data generated only by machines or produced by scientific instruments are not testimonial and do not implicate the Confrontation Clause. *See Hamilton v. State*, 300 S.W.3d 14, 21–22 (Tex. App.—San Antonio 2009, pet. ref'd); *see also Paredes v. State*, 462 S.W.3d 510, 519 (Tex. Crim. App. 2015). Raw data produced by scientific instruments are not testimonial statements, as the data are in essence "statements" by the machine rather than the operator of the instrument. *Hamilton*, 300 S.W.3d at 21–22. The Confrontation Clause applies to statements made by persons, not machines. *Id.*

The trial record establishes that Wright's at-home breath alcohol testing device was a computer that self-generated monitoring and photo data, and the summary reports were printouts of that raw computer-generated data. No human-generated comments appear in any of Wright's summary reports.

The summary reports generated from the data stored and transmitted by the device did not rely upon the assistance, observations, or reports of a human declarant, the data are not a statement of a person, and therefore they are not testimonial statements. *See, e.g.*, *Paredes*, 462 S.W.3d at 519; *Stevenson*, 920 S.W.2d at 343; *Ly*, 908 S.W.2d at 600; *Murray*, 804 S.W.2d at 284; *Nguyen,* 2022 WL 3714494, at *8. Because the reports are computer-generated records— "statements of a machine"—they are not testimonial. *Hamilton*, 300 S.W.3d at

7

21–22. The raw data "are not the functional equivalent of live, in-court testimony because they did not come from a witness capable of being cross-examined. They came from a computer." *Paredes*, 462 S.W.3d at 519. The mere fact that the data collected by the device were ultimately formatted into a legible report does not convert them into testimonial statements. *Nguyen,* 2022 WL 3714494 at \*8.

Here, Wright's computer-generated alcohol monitoring device records were not testimonial. Thus, as a matter of law, the trial court's admission of these records could not have violated Wright's Confrontation Clause protections under the Sixth Amendment.

**D. The Issue of Whether Computer-Generated Alcohol Testing Records Can Be Authenticated by a Business Records Affidavit Was Not Briefed.**

At trial, Wright objected to Exhibit 99 as follows:

| | |
|---|---|
| State: | At this time, Your Honor, State will offer State's Exhibit No. 99 under 902.10, which is a business record affidavit accompanied by the Intoxalock records. |
| Trial Court: | Any objection? |
| Appellant: | I do, Judge. I object to her – the affidavit. I would need to cross-examine these people to make sure that these records are accurate. |
| . . . . | |
| Trial Court: | What's your objection? |
| Appellant: | Hearsay, *Melendez-Diaz vs. Massachusetts* says – I mean, *Bullcoming v. New Mexico*, all those cases say I'm entitled to cross-examine the analyst that put together the records. |

| State: | And it's a self-authenticating business record with affidavit.  So therefore, I don't have to call a sponsoring witness in order to get them in. |
| --- | --- |
| Appellant: | They're testimonial, Judge.  That's the problem. |
| Trial Court: | Okay, I know what you're saying.  Objection is overruled.  99 is admitted…. |

Although Wright objected at trial to the lack of a witness to cross-examine about the accuracy of the records, Wright does not analyze this issue on appeal. Wright asserts that Exhibit 99 was unreliable and notes in passing that the business records exception to the hearsay rule must be shown by an affidavit complying with Rule 902(10).  However, Wright's brief focuses on her hearsay and Confrontation Clause complaints, not her accuracy objection.  Wright does not spell out a reliability or authentication argument against the admission of business records relating to alcohol testing or support it with legal analysis.  Wright has inadequately briefed this issue by neglecting to present argument and authorities. *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).  The issue of whether it is possible to authenticate computer-generated alcohol testing records pursuant to a business records affidavit was not briefed, and we will not reach it in this case.

We overrule Wright's first issue.

## III. The Trial Court Abused Its Discretion in Admitting Notifications from Pretrial Services, but Wright's Substantial Rights Were Not Affected.

In Wright's second issue, she contends that the trial court abused its discretion when it took judicial notice of letters from the pre-trial services

department to the court as State's Exhibits 100 through 103. Wright's counsel lodged hearsay objections. The State asserted that these exhibits were "a copy of the Court's record" and noted that Exhibits 101 through 103 had "Court Record" stamped on them. The trial court overruled Wright's objections and admitted all these exhibits.

With no objection from Wright, the State also offered, and the trial court admitted into evidence, Wright's Tarrant County convictions for DWI and possession of marijuana as State's Exhibits 104 and 105.

## A.    Standard of Review

We review a trial court's admission or exclusion of evidence under the abuse of discretion standard of review. *Beham*, 559 S.W.3d at 478. So long as the trial court's decision falls within the "zone of reasonable disagreement," we must uphold the decision. *Id.*

Article 37.07 of the Texas Code of Criminal Procedure governs the admission of evidence during the punishment phase of trial and expressly permits the State and the defendant to offer evidence of "any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant . . . and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant." TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1).

## B.    The Law Governing Judicial Notice

"Adjudicative facts" are facts specific to the pending case and are typically required to be established by evidence. *Kubosh v. State*, 241 S.W.3d 60, 64 (Tex.

10

Crim. App. 2007). Under Rule 201, a trial court has discretion to take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. TEX. R. EVID. 201(b)(2). "Adjudicative facts which may be judicially noticed are relevant to the ultimate issue in dispute, but are not themselves the subject of any controversy." *Watts v. State*, 99 S.W.3d 604, 610 (Tex. Crim. App. 2003). "When a trial judge takes judicial notice of adjudicative facts, he authorizes the factfinder to accept the truth or existence of those specific facts without requiring formal proof." *Id.* at 609–10. In a criminal case, the rules direct that "the court must instruct the jury that it may or may not accept the noticed facts as conclusive." TEX. R. EVID. 201(f).

## C. The Trial Court Abused Its Discretion in Taking Judicial Notice of the Notifications from Pretrial Services.

Here, the exhibits contain statements made by out-of-court declarants relating to Wright's alleged failures to comply with the conditions of her bond and the subsequent termination of her bond supervision. State's Exhibits 100–103 are out-of-court statements offered for their truth, and they contain disputed factual assertions not subject to judicial notice under Texas Rule of Evidence 201. They should not have been admitted into evidence over Wright's timely hearsay objection. TEX. R. EVID. 801–02.

The trial court was empowered, at most, to take judicial notice of the existence of these notifications. A court may take judicial notice of its own records. *Brown v. Brown*, 145 S.W.3d 745, 750 (Tex. App.—Dallas 2004, pet.

11

denied) (citing *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ)). However, while a court may take judicial notice *that* a document has been filed, the trial court may not take judicial notice of the truth of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file. *See O'Donnell v. Vargo*, No. 05-14-00404-CV, 2015 WL 4722459, at *4 (Tex. App.—Dallas Aug. 10, 2015, no pet.) (mem. op.); *Gruber v. CACV of Colo., LLC*, No. 05-07-00379-CV, 2008 WL 867459, at *2 (Tex. App.—Dallas, April 2, 2008, no pet.) (mem. op.); *see also Tschirhart*, 876 S.W.2d at 508.

Here, the notifications and attached documents were generated not by the trial court, but instead by the third-party pretrial services department. Instead of merely taking judicial notice that notifications had been filed, the trial court took judicial notice of their contents, without limitation, and admitted the unauthenticated hearsay documents into evidence for the truth of the allegations in those documents. This error of law constitutes an abuse of discretion. *In re Shifflet*, 462 S.W.3d 528, 539 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

**D.    The Judicial Notice Error did Not Affect Wright's Substantial Rights.**

A trial court's error in applying an evidentiary rule is non-constitutional error. *Jones v. State,* 111 S.W.3d 600, 604 (Tex. App.—Dallas 2003, pet. ref'd) (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). A reviewing court disregards non-constitutional error that does not affect a defendant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016).

In analyzing whether a jury's decision was adversely impacted by alleged error, the reviewing court "should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). The jury's determination should not be overturned for such alleged error if, after examining the entire record, we have fair assurance that the claimed error did not influence the jury or had only a slight effect on the jury's verdict. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

As to State's Exhibits 100–103, we conclude that in the context of the entire evidentiary record, these documents did not influence, or had only a slight influence on, the jury's mid-range punishment verdict. Although the notices were erroneously admitted, the substantive evidence of Wright's alcohol testing (State's Exhibit 99) and her two later convictions (State's Exhibits 104-05) referred to in the notices was independently admitted into evidence for the jury's consideration.

After examining the entire record, we conclude that the jury's decision to return its verdict of twelve years' imprisonment—approximately midway between the State's requested twenty years and Wright's requested probation—was not adversely affected by the error. The jury heard evidence of Wright's conduct in the instant case: drinking alcohol and smoking marijuana for hours, possibly driving intoxicated, driving into and killing bicyclist Middleton, failing to identify herself, driving away from the scene twice, possibly attempting to destroy

13

evidence, and failing to turn herself in to authorities for two days and only after law enforcement found her. The alcohol monitoring device records were in evidence showing Wright missed and failed tests while on bond, as discussed in the previous section. With no objection from Wright, the jury further considered the Tarrant County convictions for DWI and possession of marijuana while Wright was on bond in this case, including the police–camera evidence that, during that arrest, Wright verbally abused and insulted the arresting officers with explicit sexual, derogatory language and spat on a hospital floor, announcing, "It's a hospital and somebody will clean it up." The four improperly admitted notifications from pretrial services were consistent with, and cumulative of, the other evidence of her similar conduct during the same time period, and were unlikely to have affected Wright substantially.

For example, this Court previously held, in *Quezada v. State*, that even if the trial court had abused its discretion in admitting computer-generated data and testimony about the defendant's alcohol monitoring reports, prohibited consumption of alcohol pending trial, and tampering with the SCRAM device, the totality of evidence surrounding the charged crime and the defendant's independent bad acts negated the contention that the defendant's substantial rights were violated at sentencing, especially where the trial court sentenced the first-time offender to ten years in prison, the middle of the twenty-year sentencing range. *Quezada v. State*, No. 05-11-01270-CR, 2013 WL 1277852, at *3-5 (Tex. App.—Dallas Feb. 26, 2013, pet. ref'd) (mem. op., not designated for publication).

Considering the entire record, we have fair assurance that the four complained-of exhibits had no more than a slight effect on the jury's sentence or the jury's conclusion that Wright was an unsuitable candidate for probation. Thus, the jury's punishment decision should be affirmed. *Id.*

We overrule Wright's second issue.

## IV. Failure to Submit a Jury Charge on Judicial Notice Was Not Harmful Error.

Wright's third issue complains that, after taking judicial notice of the aforementioned exhibits, the court was required to instruct the jury that it was not required to accept those judicially noticed facts as true. During the charge conference, Wright made no objection or request as to Texas Rule of Evidence 201(f)—that rule provides, "In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive."

### A. Standard of Review

Texas Code of Criminal Procedure Article 36.14 requires the trial court to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. art. 36.14. The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Here, the trial court's charge omitted Rule 201(f)'s requirement to "instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."

15

TEX. R. EVID. 201(f); *see also Lyle v. State*, 418 S.W.3d 901, 904–05 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Where claimed charge error was the subject of a timely objection in the trial court, reversal is required if there is a showing of some harm to the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). In contrast, if the defendant failed to object, reversal is warranted only if the error caused egregious harm such that the defendant was deprived of a fair and impartial trial. *Id.*; *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) ("Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."); *Lyle*, 418 S.W.3d at 906–07 (rejecting claim of egregious harm where court's charge omitted Rule 201 instruction).

Because Wright did not object to the trial court's omission or request a Rule 201(f) limiting instruction in the jury charge, she must show that she suffered egregious harm. *Delgado*, 235 S.W.3d at 249; *Narasimha v. State*, No. 05-15-01410-CR , 2016 WL 6462400 at *4 (Tex. App.—Dallas Oct. 31, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that the omission of a Rule 201(f) instruction is not structural error and is subject to *Almanza* review). The error must have created such harm that Wright "has not had a fair and impartial trial." *Almanza*, 686 S.W.2d at 171.

16

Harm is determined considering the totality of the jury charge and the evidence, "including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see also Zinger v. State*, 899 S.W.2d 423, 434 (Tex. App.—Austin 1995) (reviewing trial court's failure to give a Rule 201 instruction for egregious harm and concluding no such harm occurred), *rev'd on other grounds*, 932 S.W.2d 511 (Tex. Crim. App. 1996).

## B.    No Egregious Harm Resulted from the Jury Charge Error.

Here, the jury charge provided the correct punishment range and properly informed the jury that it could assess prison time or probation if it assessed punishment that was no more than ten years' confinement in the Texas Department of Criminal Justice. The charge also instructed that the jury could consider Wright's extraneous conduct only if it was proven beyond a reasonable doubt. Nothing in the charge or the trial record suggests that the jury was ever told it was required to credit the judicially noticed documents. The charge and record are silent as to what weight, if any, the jury gave to these materials. The same jury had already convicted Wright for failing to stop and render aid after fatally driving into bicyclist Middleton. Against this backdrop and Wright's undisputed successive convictions for DWI and possession of illegal drugs (arising from a traffic stop just four months after Wright killed Middleton), it is difficult to imagine a reasonable jury giving meaningful weight to out-of-court statements on

17

Wright's alleged failures to comply with the conditions of her bond and the subsequent termination of her bond supervision.

As discussed above, after examining the entire record, we have fair assurance that the improperly noticed exhibits themselves did not influence the jury or had only a slight effect on the jury's verdict. As such, Wright suffered no egregious harm. Similarly, the court's failure to instruct the jury that it may or may not accept the exhibits as conclusive also did not cause Wright egregious harm. *Zinger*, 899 S.W.2d at 434, *rev'd on other grounds,* 932 S.W.2d 511 (Tex. Crim. App. 1996); *cf. Quezada*, 2013 WL 1277852 at *3-5.

At punishment, the contested issue was whether Wright was a suitable candidate for probation. The jury had already convicted Wright in the incident where she drove over and killed bicyclist Middleton right after she had dedicated a day and night to drinking alcohol and using illegal drugs. The jury had heard evidence that, just four months later while on bond for that offense, Wright was arrested and convicted of additional charges relating to driving under the influence and possessing illegal drugs. The records from Wright's alcohol monitoring device, showing missed and failed tests, were also in evidence. The only note from the jury to the trial court inquired about whether Wright had received criminal convictions from her other alleged criminal wrongdoings in 2002 and 2015. Wright's counsel agreed that the trial court should instruct the jury that Wright had no convictions from those occasions.

In response to the four judicially noticed exhibits, the jury heard Wright's evidence that cast doubt on whether the missed alcohol tests were due to Wright's

skipping tests or, instead, due to malfunction of the monitoring device. Character witness Smith testified that Wright had repeated issues with the breathalyzer not working, and Smith attributed the missed tests to the device malfunctioning. The four exhibits therefore were not conclusive evidence on any issue, and the jury could weigh the properly admitted conflicting testimony from Wright's witness. The weight of the evidence and the contested issue both weigh against finding egregious harm.

Similarly, counsel's respective arguments to the jury fail to support any showing of egregious harm. Wright argued for a two to ten years' sentence with probation and stated that her fatal crime was a tragic accident. Wright claimed she had already "emotionally paid" for killing Middleton and that the incident may have contributed to her subsequent alcohol abuse. The State did refer to the contents of the four judicially noticed exhibits in its argument. However, the underlying records from the alcohol monitoring device and the subsequent arrests and convictions were separately in evidence, and the State invited the jury to consider those records. To the extent that the judicially noticed exhibits summarized and referred to this evidence, they were cumulative of other admitted evidence.

Ultimately, the jury returned a verdict of twelve years' confinement—considerably less than the twenty-year maximum the State recommended. On balance, we conclude that Wright was not egregiously harmed by the trial court's charge error at the punishment phase. *Jones,* 111 S.W.3d at 609–10 (holding there was no egregious harm in the trial court's erroneous failure to give a reasonable

19

doubt instruction for extraneous bad acts, in part, because the jury assessed punishment far below the maximum available punishment the State had requested). The trial court's failure to give an instruction about judicial notice did not affect the very basis of the case, deprive Wright of a valuable right, or vitally affect a defensive theory. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

After reviewing the entire record, we determine the erroneous omission of the Texas Rule of Evidence 201(f) instruction in the jury charge did not cause Wright to suffer egregious harm.

We overrule Wright's third issue.

## V.    Conclusion

Having overruled all of Wright's issues, we affirm the trial court's judgment.

220429f.u05
Do Not Publish
TEX. R. APP. P. 47

/Emily Miskel/
EMILY MISKEL
JUSTICE

20



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KALLIE WRIGHT, Appellant

No. 05-22-00429-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F-1830193-U. Opinion delivered by Justice Miskel. Justices Goldstein and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of March, 2024.